**Norma O. McCAULEY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 96–598C.**

United States Court of Federal Claims.

June 30, 1997.

Norma O. McCauley, Washington, DC, pro se.

Andrea I. Kelly, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were Jeanne E. Davidson, Assistant Director, David M. Cohen, Director, and the Assistant Attorney General, attorneys of record, for defendant.

## OPINION

HORN, Judge.

The plaintiff, Norma O. McCauley, filed the above-captioned *pro se* complaint in this

court on September 24, 1996. The complaint sets forth the following three counts: Count I, that the plaintiff "lost" a cause of action and its related remedies against her former employer, in the United States District Court for the Northern District of Illinois, Eastern Division, due to the negligent actions of the defendant; Count II, that the plaintiff was denied her civil-rights due to the negligent actions of the defendant; and, Count III, that the plaintiff was denied "the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodation of any place of public accommodation," thereby breaching the defendant's alleged duty to accommodate the plaintiff pursuant to the Americans with Disabilities Act (ADA).

On November 25, 1996, the defendant filed a motion to dismiss the above-captioned case for lack of jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), and for failure to state a claim upon which relief could be granted, pursuant to RCFC 12(b)(4).[1] Defendant argues that plaintiff's complaint is based solely on allegations of tort, due process, and civil rights violations, which the defendant argues are not within the jurisdiction of this court. In the alternative, defendant asserts that plaintiff has failed to state a claim upon which relief can be granted because neither Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 1983, nor the ADA, provides the plaintiff with a cause of action in the United States Court of Federal Claims.

On December 26, 1996, the plaintiff responded to defendant's motion to dismiss by filing "Plaintiff's Answer to Defendant's Motion to Dismiss," which reiterates the claims she made in her complaint. In addition, the plaintiff's "answer" argues that an implied contract, in the form of two "right to sue letters,"[2] was created between the defendant and the plaintiff, and that the documents provided to the plaintiff were fraudulent. Plaintiff's "answer" also renews an earlier motion requesting assignment of an attorney to the plaintiff. In its reply, the defendant argues that a Right to Sue letter is not a contract, and further reiterates that the plaintiff's other claims are outside this court's jurisdiction. Finally, the plaintiff filed a "surreply,"[3] which again argued that an implied contract existed between the parties, and that "[t]he Defendant's [sic] took the Plaintiff's rights away, all remedy under the law that applied to the Plaintiff was lost by the action of the Defendants [sic]."

### FACTUAL BACKGROUND

The plaintiff, Norma O. McCauley, is a former employee of Peoples Gas Light & Coke Company (Peoples Gas), an Illinois corporation, licensed to do business in the State of Illinois. The plaintiff was hired by Peoples Gas on January 29, 1992, as a laborer. Plaintiff alleges that at the time plaintiff was hired, her employer, Peoples Gas, was made aware of plaintiff's diabetic condition by a letter from plaintiff's doctor. Plaintiff alleges that, "[o]n or about ..." July 16, 20, 25, 27, 31, August 10, and September 1992, she was sexually harassed, including "inappropriate comments, demands for sexual favors, and unwelcomed sexually offensive conduct from Pat Jackson, ..." an employee of

---

1. The court notes that in the defendant's reply to plaintiff's response to defendant's motion to dismiss, the defendant makes a passing reference to an alternative motion for summary judgment. The defendant, however, makes no other references to an alternative motion for summary judgment, does not offer arguments regarding the standards of proof applicable in a motion for summary judgment, or argue the merits in support of a ruling on the grounds of summary judgment.

2. The "right to sue letter" to which the plaintiff refers is Equal Employment Opportunity Commission (EEOC) Form 161–B, which is captioned "NOTICE OF RIGHT TO SUE," and is issued to claimants.

3. On February 24, 1997, the *pro se* plaintiff filed a motion for leave to file a "sur-replay [sic]" to the defendant's reply on its motion to dismiss. Subsequently, on February 25, 1997, the plaintiff filed a motion for leave to file a "substitute sur-reply." The document which was the subject of the motion to file a "substitute sur-reply," however, was captioned "Plaintiff's Reply to Defendant's Response to Plaintiff's Response to Defendant's Motion to Dismiss." Because of plaintiff's *pro se* status, the court accepted these documents for filing. In order to avoid confusion, the court refers to the substituted document as the plaintiff's "surreply."

Peoples Gas, who held the position of crew leader. According to plaintiff, Mr. Jackson's offensive conduct allegedly included the following:

a) requests for dates;

b) offers to purchase personal items for Plaintiff, such as lipstick;

c) statements that watching Plaintiff work affected him in a sexual manner;

d) stalking Plaintiff at her home on at least three occasions, after which he told Plaintiff that he had looked into her bedroom windows, and accurately described the colors of the bedroom and other features of Plaintiff's home;

e) following Plaintiff on personal errands during Plaintiff's off-work hours and then, in the work place, describing to Plaintiff in detail the personal errands she had done; and

f) threatening that he would rape Plaintiff because she had refused to have a sexual relationship with him.

Plaintiff further alleges that Mr. Jackson informed plaintiff that he would not prepare her written evaluation,[4] and as a consequence she would lose her job, unless plaintiff participated in a sexual relationship with him. Plaintiff allegedly rejected Mr. Jackson's advances and indicated that the behavior was unwelcome. According to plaintiff, commencing June 1992, plaintiff's blood sugar rose as a result of the alleged sexual harassment and the alleged hostile work environment.

According to the plaintiff, she complained regarding Mr. Jackson's offensive behavior to his superiors, and indicated that she feared retaliation. She requested that Peoples Gas take measures to halt the offensive behavior, without making it known to plaintiff's co-workers that plaintiff had reported his conduct. Plaintiff alleges that her male co-workers subsequently became "generally" aware that she had reported Mr. Jackson's conduct, and allegedly subjected her to hostile comments, including statements that she was to "watch her back" because the men did not want to work with her.

According to the plaintiff, on or about August 3, 1 992, plaintiff was assigned to a two-person crew.[5] The supervisor of the crew was a Mr. Robert Chew. Plaintiff alleges that Mr. Chew entered into an "unwelcome" and discriminatory course of conduct, due to plaintiff's gender, designed to create "an intimidating, hostile and offensive working environment for Plaintiff. . . ." Plaintiff alleges that Mr. Chew's inappropriate behavior included, among other things, the following:

(a) treating Plaintiff with disrespect;

(b) referring to Plaintiff as a 'skirt';

(c) purposely or carelessly causing Plaintiff to be splattered with male urine left in a work hat in a place where Plaintiff was likely to move the hat;

(d) failing to permit Plaintiff to use bathroom facilities;

(e) failing to provide to Plaintiff the safety and mutual support that was provided for the male laborers; and

(f) regularly giving Plaintiff, as a female, the least desirable work assignments.

Furthermore, plaintiff alleges that following her complaints to the management of Peoples Gas about the treatment she was receiving from her supervisors, her situation worsened. According to the plaintiff, the working conditions apparently became so intolerable for plaintiff that she was forced to terminate her employment with the company on September 25, 1992. Plaintiff asserts that on October 6, 1992, plaintiff returned to work at the request of Peoples Gas, with the promise that working conditions would improve. Plaintiff alleges, however, that the offensive and discriminatory conditions persisted.

---

4. According to the plaintiff, upon commencing her employment with Peoples Gas, plaintiff was allegedly instructed by representatives of Peoples Gas that as a condition of her employment she must obtain written evaluations from three crew leaders, one of whom was Pat Jackson.

5. According to the defendant's Answer filed in response to Plaintiff's Second Amended Complaint in the case Ms. McCauley brought in the United States District Court for the Northern District of Illinois, Eastern Division, a copy of which was included by plaintiff as an exhibit in the case at bar, the defendant, Peoples Gas, indicated that the assignment had commenced on August 4, 1992.

Plaintiff continued to work under the supervision of Mr. Chew, despite her request to be assigned to another supervisor.

Later in October, plaintiff again complained to Peoples Gas regarding her allegedly intolerable working conditions. According to plaintiff, on October 27, 1992, while plaintiff was working, she was told to report to the medical department. Also, according to the plaintiff, her employer, through an unnamed medical representative, allegedly directed the plaintiff not to return to work until her blood sugar level returned to normal, despite plaintiff's statements that, in the past, she had performed her work at Peoples Gas satisfactorily during times when her blood sugar level had been elevated. According to the plaintiff, plaintiff's salary and all benefits were halted as of October 27, 1992.[6]

The plaintiff alleges in her complaint that on September 30, 1992, she filed a complaint at the Illinois Department of Human Rights (IDHR), alleging sexual harassment by her supervisor. On October 23, 1992, plaintiff filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission (EEOC), charge number 210930209. The Charge of Discrimination indicated that the most recent or continuing discrimination had taken place on October 21, 1992. On the form, the plaintiff checked the boxes listing "sex" and "retaliation" as the basis for her allegations of discrimination. Although the Charge of Discrimination form provides a space within which to write the "State or local Agency, if any," designating where the charge could also be filed, this space was left blank on the October 23, 1992 form, and the plaintiff left blank the box which states "I also want this charge filed with the EEOC ..." EEOC charge number 210930209 includes the following narrative:

I. I was hired by the above named Respondent on January 29, 1992, as a Laborer. In September, 1992, I complained internally about being sexual-

ly harassed and harassed by my co-workers. On September 25, 1992, I felt forced to resign. On October 6, 1992, I was reinstated. Upon my return to work, I have complained internally about being harassed by a co-worker.

II. On approximately October 5, 1992, I was contacted by the Respondent and I was informed that an internal investigation had been conducted on my complaint of sexual harassment and harassment. The Respondent informed me that the co-workers were guilty of the offenses and I was to be reinstated. To date, the Respondent has been informed that I am being harassed and nothing has been done.

III. I believe that I have been discriminated against because of my sex, female and in retaliation for opposing Respondent's discriminatory practice in that:

A. I am being forced to work in an unsafe and unsanitary work environment.

B. I am working with the co-worker whom I initially complained of being harassed by. To date, I am still being harassed by this employee.

Charge number 210930209 was stamped: "REC'D OCT 23 1992 ... EEOC CHICAGO D.O."

On November 19, 1992, the plaintiff allegedly submitted a further amendment to the charges contained in charge number 210930209, to include a claim for discrimination under the ADA. She based this claim on the alleged directive from the Peoples Gas' "medical representative (name unknown)," to go home and not return to work until plaintiff's blood sugar level was reduced. Although plaintiff alleges in her complaint that this submission amended her earlier EEOC charge number 210930209, the November 19, 1992 Charge of Discrimination bears a different charge number, 1993CF1182.[7] On the

---

6. In their Answer to Plaintiff's Second Amended Complaint, filed in the United States District Court for the Northern District of Illinois, Eastern Division, the defendant, Peoples Gas, stated that plaintiff's wages were halted when she ceased active employment on October 21, 1992.

7. The court was not presented with facts which would indicate the reason for the change of charge number or whether the new number reflects a separate claim to a different entity. The complaint asserts that the plaintiff had already submitted a complaint at the IDHR office alleg-

November 19, 1992 form, the blank for the "State or local Agency, if any" was filled in to indicate "Illinois Dept. of Human Rights," and the box which states "I also want this charge filed with the EEOC...." was filled in. The November 19, 1992 Charge of Discrimination, number 1993CF1182, does not bear any markings which indicate that it was received by either the IDHR or the EEOC. On the November 19, 1992 Charge of Discrimination form, the boxes checked for the claimed cause of discrimination were "RETALIATION," with "VII" typed next to it, and "OTHER (Specify)," with "S/H"[8] typed next to it. Charge No. 1993CF1182 indicated that the alleged discrimination took place on October 22, 1992. The particulars are recited on the form as follows:

AMENDMENT

I. From October 6, 1992 and on each and every day I worked, I have been subjected to a hostile work environment. On September 25, 1992, I was constructively discharged. On or around August 18, on August 10, July 31, 27, 20, 16, and June 25, 1992, I was sexually harassed. I am a laborer at Respondent, having been hired on January 29, 1992. On October 27, 1992, I was forced to begin a medical leave of absence.

II. According to Respondent's medical representative (name unknown), I was required to take time off until my blood sugar was reduced.

III. I believe I have been sexually harassed, in violation of section 2–102(D) of the Illinois Human Rights Act and retaliated against for having opposed unlawful discrimination, in violation of section 6–101(A) of the Illinois Human Rights Act,

A. On a regular basis, including the specified dates, Pat Jackson, Supervisor made sexually suggestive and offensive comments to me. His offensive behavior has included, but not beeen [sic] limited to sexually offensive physical contact, statements to purchase personal items for me, requests for dates, statements that his watching me accomplish certain aspects of my job affect him in a sexual manner, and stalking me on at least three occasions. I always rejected this behavior. Also, I reported the matter to his superiors, including Shop Superintendent, Willard Evans. As a result of my complaint, an investigation was initiated. When Jackson learned I had reported his actions, he became angry and began to make my life miserable. By his creating a ... hostile work environment, I was forced to ˌaccept the negative attitudes of my co-workers.

B. Due to the continuing harassment and discriminatory conditions of my employment, I concluded that Respondent did not want me employed there and, theus [sic], constructed a work environment so hostile and intolerable that no reasonable minded person could continue to work effectively within such an environment. Consequently, although I had not yet received word of the disposition of my complaint, I had no ˙ other alternative but to resign from Respondent on September 25, 1992.

C. On October 6, I learned that the matter had been resolved in my favor and I was requested to return to work. I did so, believing I would be able to do so in peace; unfortunately, I was unable to work in a non-discriminatory environment; in fact, the situation worsened. I attempted to bring this matter to the attention of Evans, but he has not been available when I call.

D. Although I could have been given a light duty assignment, such as the one given to Calhoun (first name unknown), who also suffers with

---

ing sexual harassment by her supervisor on September 30, 1992. The court, however, was not provided with a copy of the September 30, 1992 claim as part of the record.

8. "S/H" is not defined on the form or in the filings before the court. It, however, may mean sexual harassment.

high-blood sugar levels) [sic]. I was forced to take a medical leave without pay.

Plaintiff claims that this November 19, 1992 Charge of Discrimination (1993CF1182) "should have registered the Plaintiff with the ADA," and that the plaintiff had requested that charge number 1993CF1182 be "cross-filed with the EEOC's office."

Plaintiff further alleges that she again amended her Charge of Discrimination against Peoples Gas on February 26, 1993, by filing a second amendment with the IDHR and the EEOC, which also bore charge number 1993CF–1182. Although the February 26, 1993 form bears the "OFFICIAL SEAL" of a notary, the form does not bear any markings which would indicate that it was received by the IDHR, the EEOC, or any other official organization. The alleged cause of discrimination on the February 26, 1993 Charge of Discrimination form was indicated by checking the box for "RETALIA-TION," and typing "VII" next to it, and by checking the box for "SEX." Once again, the form indicated that the alleged discrimination had taken place on October 22, 1992. Most of the second amendment was identical to the first amendment, however, certain changes and insertions in the text were made. The narrative portion of the February 26, 1993 Charge of Discrimination reads:

Amendment # 2

I. From October 6, 1992, and on each and every day I worked, I have been subjected to a hostile work environment. On September 25, 1992, I was constructively discharged. On August 10, July 31, 27, 20, 16, and June 25, 1992, I was sexually harassed. From approximately August 3, 1992, and continuing until early October 1992, I was harassed.

II. According to Respondent's medical representative (name unknown), I was required to take time off until my blood sugar was reduced.

III. I believe I have been discriminated against based on my sex, female; sexually harassed, in violation of Section 2–102(D) of the Illinois Human Rights Act; and retaliated against for having opposed unlawful discrimination, in violation of Section 6–101(A) of the Illinois Human Rights Act, in that:

A. On a regular basis, including the specified dates, Pat Jackson, Supervisor (male) made sexually suggestive and offensive comments to me. His offensive behavior has included, but not been limited to sexually offensive physical contact, statements to purchase personal items for me, requests for dates, statements that his watching me accomplish certain aspects of my job affect him in a sexual manner, and stalking me on at least three occasions. I always rejected this behavior. Also, I reported the matter to his superiors, including Shop Superintendent, Willard Evans (males). As a result of my complaint, an investigation was initiated. When Jackson learned I had reported his actions, he became angry and began to make my life miserable. By his creating a hostile work environment, I was forced to accept the negative attitudes of my co-workers. Rudy Martinez told me to watch my back because the men did not want to work with me and would not protect me. Rudy further stated that I needed my male co-workers, and it was a concern that if I turned one male employee in, that I would turn them all in.

B. Due to the continuing harassment and discriminatory conditions of my employment, I concluded that Respondent did not want me employed there and, thus, constructed a work environment so hostile and intolerable that no reasonable minded person could continue to work effectively within such an environment. From approximately August 3, 1992, and continuing until the medical leave, I was assigned to work with crew leader Robert Chew (male), who constantly treated me with disrespect. He urinated in his work hat and purposely left it in a place where it would spill on me. He referred to me as a 'skirt'; and he

made my ability to work with him unbearable. Robert Chew purposely caused me to arrive late at the worksite resulting in a less than desirable job reassignment. Mr. Chew disregarded work rules to create unsafe and unsanitary conditions for me. I was denied the same considerations and protection he extended to male laborers under his supervision. Consequently, although I had not yet received word of the disposition of my complaint, I had no other alternative but to resign from Respondent on September 25, 1992.

C. On October 6, I learned that the matter had been resolved in my favor and I was requested to return to work. I did so, believing I would be able to do so in peace; unfortunately, I was unable to work in a non-discriminatory environment; in fact, the situation worsened. I attempted to bring this matter to the attention of Evans, but he has not been available when I call. On Octobert [sic] 22, 1992, I had a meeting with Mr. Evans to discuss my working environment. At this meeting, I informed Mr. Evans that I had taped a telephone conversation that he and I had regarding the conditions to which I had agreed to return to work. Because these conditions had not been met and my working environment continued to be hostile, my high blood sugar levels remained elevated.

D. Although I could have been given a light duty assignment, such as the one given to Calhoun (first name unknown), who also suffers with high-blood sugar levels) [sic]. I was forced to take a medical leave without pay.

Subsequently, the plaintiff requested a "Right to Sue letter" from the EEOC, after her charges allegedly had been amended to include the ADA claim. On May 14, 1993, the District Director of the Chicago, Illinois Office of the EEOC issued a "Notice of Right

to Sue" to the plaintiff, bearing charge number 210930209. The plaintiff states in her complaint that she believed that this first Right to Sue form, dated May 14, 1993, was based on the statements that were made in the Charge of Discrimination forms filed by the plaintiff on September 30, 1992, October 23, 1992, November 19, 1992 (first amendment), and February 26, 1993 (second amendment).[9] Therefore, she alleges that she believed the May 14, 1993 form included plaintiff's claim under the ADA. The standard Notice of Right to Sue form, issued by the EEOC to the plaintiff, and dated May 14, 1993, had several boxes filled in, and reads:

TO THE PERSON AGGRIEVED:

This is your NOTICE OF RIGHT TO SUE under Title VII. It is issued at your request. IF YOU INTEND TO SUE THE RESPONDENT(S) NAMES IN YOUR CHARGE, YOU MUST FILE A COMPLAINT IN THE FEDERAL DISTRICT COURT WITHIN NINETY (90) DAYS FROM THE RECEIPT OF THIS NOTICE OF RIGHT TO SUE: OTHERWISE YOUR RIGHT TO SUE IS LOST. FILING THIS NOTICE IS NOT SUFFICIENT. A COURT COMPLAINT MUST CONTAIN A SHORT STATEMENT OF FACTS OF YOUR CASE WHICH SHOW THAT YOU ARE ENTITLED TO RELIEF.

Your suit may include any allegation contained in your charge of employment discrimination or any matter which was or should have been discovered by the Commission during its investigation of your charge.

[x] More than 180 days have expired since the filing of this charge.

\*　　\*　　\*　　\*　　\*　　\*

[x] With the issuance of this Notice of Right to Sue, the Commission is terminating any further processing of this charge.

\*　　\*　　\*　　\*　　\*　　\*

---

9. Although difficult to place chronologically, it appears from the narrative included in plaintiff's complaint, that plaintiff is claiming that prior to the alleged third amendment to the October 23, 1992 Charges of Discrimination, a Maryanne Petway at the IDHR office should have checked the box for the ADA claim, and that when plaintiff inquired, Ms. Petway indicated Counts II and III of her amended charges included the ADA claim.

An information copy of this Notice of Right to Sue has been sent to the respondent(s) shown below.

cc: (to respondent) On Behalf of the Commission People's Gas & Light Company ...

According to plaintiff's complaint, in January of 1994, she was allegedly informed "by a lawyer" that someone at the EEOC's office had failed to mark the box which indicated a disability on her Charge of Discrimination form,[10] despite the plaintiff's allegation that she had amended the Charge of Discrimination in 1992 to include a claim pursuant to the ADA. Also according to the plaintiff, on February 14, 1994, with the assistance of Ms. Nola Smith, an EEOC supervisor, the plaintiff submitted a third amendment to her claim, again filed under charge number 1993CF–1182. The third amendment was a photocopy of the second amendment, dated February 26, 1993, but reflected a handwritten "x" in the "DISABILITY" box, and "Amendment # 2" was altered, also by hand, to indicate "Amendment # 3." This third amendment is the only version of charge number 1993CF–1182 which bears stamps of receipt, one which reads: "RECEIVED FEB 14 1994," and a second, very faint stamp, which appears to read: "RECEIVED EQUAL EMPLOYMENT OPPORTUNITY COMMISSION ... FEB 14 1 04 PM '9[?] ... CHICAGO ... DISTRICT OFFICE."

The plaintiff then requested a second Right to Sue letter from the EEOC.[11] A second "Notice of Right to Sue" was issued on March 7, 1994 [12] with the charge number 21B930274. The 21B930274 charge number on the March 7, 1994 Right to Sue notice, however, is not a charge number reflected elsewhere in the record. The March 7, 1994 standard notice, on which several boxes had been filled in, states:

TO THE PERSON AGGRIEVED:

This is your NOTICE OF RIGHT TO SUE. It is issued at your request. If you intend to sue the respondent(s) named in your charge, YOU MUST DO SO WITHIN NINETY (90) DAYS OF YOUR RECEIPT OF THIS NOTICE: OTHERWISE YOUR RIGHT TO SUE IS LOST.

[X] More than 180 days have expired since the filing of this charge.

\* \* \* \* \* \*

[X] With the issuance of this Notice of Right to Sue, the Commission is terminating its process with respect to this charge.

\* \* \* \* \* \*

(cc: to respondent) On Behalf of the Commission

[X] Copy of Charge

"Notice of Charge of Discrimination," issued under charge number 21B930274, to Peoples Gas, and predates the plaintiff's March 7, 1994 "Notice of Right to Sue," under charge number 21B930274. The February 15, 1994 Notice of Charge of Discrimination, on which several blanks have been filled in, reads:

You are hereby notified that a charge of employment discrimination has been filed against your organization under:
[xx] TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

\* \* \* \* \* \*

[xx] THE AMERICANS WITH DISABILITIES ACT
The boxes checked below apply to your organization:
1. [x] No action is required on your part at this time.

\* \* \* \* \* \*

BASIS OF DISCRIMINATION
... [X] SEX ... [X] DISABILITY [X] RETALIATION ...

10. The court notes that the "Charge of Discrimination" form for charge number 210930209, filed at the EEOC on October 23, 1992, did not have a "disability" box to be checked. The October 23, 1992 form was the March 1984 version, and all subsequent forms submitted by the plaintiff were the September 1, 1991 version. The court also notes that the plaintiff's first and second amendments, bearing charge number 1993CF–1182, did have a box for disability, however, that box had not been checked.

11. The court notes that revised versions of the "Notice of Right to Sue" forms also had been implemented. The plaintiff's first Right to Sue form was the November 1986 version, the plaintiff's second Right to Sue form was the July 1987 version.

12. The court also notes that the plaintiff refers to exhibit C of the plaintiff's "surreply" as the document which reflects plaintiff's third amended charges, and which plaintiff emphasizes states "'Basis on [sic] Discrimination Sex, Disability, Retaliation.'" Exhibit C is a February 15, 1994

People's Gas Company

122 S. Michigan Ave.

Chicago, IL 60601

&

Pat Jackson

c/o People's Gas Co.

122 S. Michigan Ave.

Chicago, IL 60601

In 1993, the plaintiff brought a law suit against Peoples Gas in the United States District Court for the Northern District of Illinois, Eastern Division. While those proceedings were pending, but toward the very end of the case, on February 12, 1996, plaintiff traveled to Washington, D.C., from Chicago, to search for information regarding her ADA claim. The plaintiff allegedly went to the DOJ offices on Constitution Avenue in Washington, D.C., and requested to see and to make copies of her ADA files. At the DOJ office, however, plaintiff was informed that no records existed under the case name or numbers provided by the plaintiff. The plaintiff allegedly then went to the EEOC office in Washington, D.C. to see and make copies of her ADA claim there. Allegedly, the plaintiff was told that the file copy of plaintiff's claim only reflected charges of sexual harassment and discrimination, and that no claim was filed under the ADA.

During the course of the proceedings before the district court, Ms. McCauley was represented by a number of different attorneys, most of whom were appointed by the court. Each of those attorneys, however, withdrew from representation in the plaintiff's case. The district court judge provided the plaintiff numerous opportunities to obtain other counsel, but she failed to do so. A transcript of the following discussion between the district court judge, counsel for defendant, Peoples Gas, and the plaintiff at a status conference on February 27, 1996, was attached as an exhibit to plaintiff's complaint, and reads as follows:

THE CLERK: 93 C 4735, McCauley versus Peoples Gas & Light. Status.

MS. BROWNE: Good morning, your Honor. Carol Browne on behalf of Peoples Gas.

THE COURT: Good morning. Miss McCauley—

THE PLAINTIFF: Norma McCauley.

THE COURT:—this case has been continued numerous times, the last time to give you additional time to hire an attorney. What is the status of the case?

THE PLAINTIFF: I—on February the 6th you gave me up until this date to find an attorney or you said I had to act pro se. I had attorneys say that they would take the case, but I would have to come up with—some said 20,000 for a retainer, and some said 10 to 15. This was because I went to Washington to see the status of this case, to let them know exactly what they had to work with.

In Washington, I went to the EEOC, and also to the Justice Department. What I understood and what I told the lawyers, after going to Washington, is that I did file a case with the EEOC. But when I was in Washington for six days, they told be that the EEOC never filed the case with me with the Americans with Disabilities Act. They said that the only thing that they had in Washington with me was me coming into the EEOC in Chicago filing a case for discrimination.

The case was amended after Peoples Gas fired me or sent me home without pay. And I had up until, I think 180 days, but I did it like two weeks after they sent me home, to go to EEOC, and I did. And I filed it in a timely charge. But it does not reflect that in the EEOC reports.

Every lawyer that you appointed to me, every lawyer that I hired, I asked them, did I have in fact an EEOC—I'm sorry—an Americans with Disabilities Act case. They told me I did. And then the charge, they put it in there.

But Washington does not have any record of me filing with Americans with Disabilities Act. And I do not have a charge according to—I was on 18th and L Street at the EEOC, N.W., in Washington, and they said I do not have an Americans with Disabilities Act case.

And that's why—I talked to lawyers, I took a copy of the last case that was filed, the second amended complaint, and they

told me that those were not the charges with Americans with Disabilities Act. And that's why it's going to take me—well, that's why they were asking $20,000 for me to retain them to straighten out the mess that I have.

And they asked me, if I had all these lawyers—and I told them I had over six lawyers—they said to me, if I had all these lawyers, how come the lawyers didn't catch this before it got to this point. And I told them that was my whole complaint, that's why I had six lawyers.

I kept asking, did I have an ADA claim. And in the body of the letter—of the amended complaint, it says that, but it does not have the right statutes, the right case numbers.

And they told me in Washington and the Justice Department and also in the EEOC Department that I do not have an Americans with Disabilities Act claim. And I need more time to hire a lawyer to straighten out the mess that—

MS. BROWNE: Your Honor, if I could set the record straight.

THE COURT: Proceed.

MS. BROWNE: Mrs. McCauley's complaint, either the second or third, does contain an Americans with Disabilities Act claim. Peoples Gas has always proceeded with its discovery with the understanding that she has both a sexual harassment and an Americans with Disabilities Act claim.

She received a right to sue letter on her Americans with Disabilities Act charge, and it was added to the complaint. So I don't think we have an issue there.

THE PLAINTIFF: They don't have that in Washington. And they told me I do not have it—an Americans with Disabilities Act in Washington. And I was there for six days. And I went to the Justice Department, the EEOC Department, I went to People with Handicap Disabilities. I went all over Washington, and they do not have any charge in Washington saying that I have ever filed an Americans with Disabilities Act claim.

THE COURT: Well, it's here in the court file. Do you want it in there, or you don't want it in there?

THE PLAINTIFF: I want it in there.

THE COURT: It's in there.

Although during the status conference in district court on February 27, 1996, the plaintiff protested to the district court judge that she felt she could not pursue her case, if required to proceed *pro se,* Ms. McCauley's case against Peoples Gas was dismissed. The following colloquy summarizes the court's reasoning:

THE COURT: Well, I've told you that the Court would not appoint another lawyer. I have appointed seven, I think. Six or seven. I'm not going to appoint another one.

THE PLAINTIFF: I don't need you to appoint another one. I need—if I have to mortgage my house—

THE COURT: Okay. You have—the case has been continued a number of times to give you an opportunity to make your own arrangements. You haven't done so. Are you saying that you cannot do it yourself?

THE PLAINTIFF: I don't know the law and the case—

THE COURT: Because I'm about to dismiss it. If after six or seven Court-appointed attorneys the case doesn't move, and you can't obtain private counsel, and you tell me you can't do it yourself—

THE PLAINTIFF: No, I'm saying that—

THE COURT:—then I will dismiss the case.

THE PLAINTIFF: I said I need time, more time to get a person to come in that would work on it.

THE COURT: Well, there is no more time. You have had three years and seven lawyers. And whatever you did in Washington at those various government agencies is strictly up to you.

\* \* \* \* \* \*

THE PLAINTIFF: Your Honor, I have to tell you this. I cannot act pro se, because I don't know the law. I don't know the procedures of what to do.

THE COURT: Well, listen—

THE PLAINTIFF: I need more time to hire an attorney.

THE COURT: If you will, listen to this. I have appointed seven lawyers. Seven lawyers have withdrawn.

THE PLAINTIFF: You appointed four.

THE COURT: I will accept you representation. I believe it is more. But if even it is four, that's enough. The Court has appointed four lawyers. Each has withdrawn.

And the case was filed in 1993. You have said you have been unable to obtain private counsel. The only alternative is that you proceed pro se, that is, by yourself, or the case will be dismissed.

THE PLAINTIFF: Well, I cannot act pro se, because I don't know the law.

THE COURT: The case is dismissed. It is so ordered. This is a final order.

In her complaint in this court, plaintiff indicates that she filed two motions to appeal the dismissal of the district court case to the United States Court of Appeals for the Seventh Circuit. The plaintiff alleges in the instant complaint, that she was forced to withdraw her appeal because her complaint was allegedly "based on fraud, the Right to Sue letter was fraudulent, and the Plaintiff did not have an ADA claim ever filed, therefor [sic] the Complaint was also fraudulent."

Plaintiff also included as an exhibit to her complaint a letter she wrote to Janet Reno, the Attorney General of the United States, in which she requested assistance. On May 25, 1994, a representative of the United States Department of Justice (DOJ), Civil Rights Division, responded to the plaintiff's letter. The letter from DOJ referred the plaintiff to the caseworkers at the EEOC who were handling her charge, and informed her that the DOJ is without jurisdiction or authority to review the determinations of the EEOC, or to intervene in arbitration proceedings or litigation in federal district court relating to her charges of employment discrimination.

The plaintiff filed the above-captioned case in the United States Court of Federal Claims on September 24, 1996. The case before this court appears to be grounded on plaintiff's claim that her ADA claim before the EEOC was not part of her claim before the district court, due to the actions of government personnel, and that, therefore, she should be compensated by the government for her failed claim in the district court. The plaintiff's rambling discourse, throughout her pleadings, blames the EEOC, the DOJ, and the attorneys who represented her in district court for the failure of her claims. The plaintiff claims that the EEOC and the Department of Justice had committed fraud and later attempted to "cover up their mistakes" by issuing a second Right to Sue form, which reflected the ADA claim.

The plaintiff claims that the defendant, including the EEOC and DOJ, left her without any remedy, any cause of action, and without her right to have her case heard in court. The plaintiff claims that the defendant had an obligation to enforce its rules and regulations, and to correctly file plaintiff's claim under the ADA. Plaintiff further claims that defendant's failure to do so denied her due process and her civil rights. In plaintiff's "answer" to the defendant's motion to dismiss, and in plaintiff's "surreply," the plaintiff also asserts that the defendant has breached a contract with her.

### DISCUSSION

When considering a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). The court is required to decide any disputed facts which are relevant to the issue of jurisdiction. *Id.* at 747.

The basic standards for weighing the evidence presented by the parties when evaluating a motion to dismiss for lack of jurisdiction, pursuant to RCFC 12(b)(1), and/or a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(4), have been articulated by the United States Supreme Court and the United States Court of Appeals for the Federal Circuit, as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allega-

tions of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir. 1989); *see also Alaska v. United States*, 32 Fed. Cl. 689, 695 (1995), *appeal dismissed by* 86 F.3d 1178 (Fed.Cir.1996). In rendering a decision, the court must presume that the undisputed factual allegations included in the complaint by plaintiff are true. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 746; *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *Alaska v. United States*, 32 Fed. Cl. at 695.

The burden of establishing jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Alaska v. United States*, 32 Fed. Cl. at 695; *Catellus Dev. Corp. v. United States*, 31 Fed. Cl. 399, 404 (1994). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Moreover, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

■ In order for this court to have jurisdiction over plaintiff's complaint, the Tucker Act, 28 U.S.C. § 1491 (1994), requires that a substantive right, which is enforceable against the United States for money damages, must exist independent of 28 U.S.C. § 1491. The Tucker Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act, however, merely confers jurisdiction on the Court of Federal Claims; it does not create a substantive right enforceable against the United States for money damages. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607, *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980) (*Mitchell I*); *United States v. Testan*, 424 U.S. 392, 398–99, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976); *United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (*en banc*), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

■ Moreover, a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969). The individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Testan*, 424 U.S. at 398, 96 S.Ct. at 953. Stated otherwise, "in order for a claim against the United States founded on statute or regulation to be *successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government.*" *Cummings v. United States*, 17 Cl.Ct. 475, 479 (1989), *aff'd*, 904 F.2d 45 (Fed.Cir.1990); *see also United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983) (*Mitchell II*) (citing *United States v. Testan*, 424 U.S. at 400, 96 S.Ct. at 954 (quoting *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967))); *Duncan v. United States*, 229 Ct.Cl. 120, 138, 667 F.2d 36, 47 (1981), *cert. denied*, 463 U.S. 1228, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983).

This court's predecessor, the United States Court of Claims, articulated the jurisdiction of this court, pursuant to 28 U.S.C. § 1491, in *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002 (1967), as follows:

> Section 1491 of Title 28 of the United States Code allows the Court of Claims to entertain claims against the United States 'founded either upon the Constitution, or

any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort'. But it is not every claim involving or invoking the Constitution, a federal statute, or a regulation which is cognizable here. The claim must, of course, be for money.

*Id.* at 605, 372 F.2d 1002 (citations omitted).

In the above-captioned case, defendant has moved to dismiss the complaint for lack of jurisdiction, asserting that the counts raised are either claims sounding in tort, due process, pursuant to the Fifth and Fourteenth Amendment to the United States Constitution, or allegations of civil rights violations under 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 (Pub.L. No. 88–352, title VII, § 702, 78 Stat. 255 (1964)(codified as amended at 42 U.S.C. § 2000e—2000e–17 (1994))), or the Americans with Disabilities Act (Pub.L. No. 101–336, 104 Stat. 327 (1990)). Defendant argues that the claims raised in plaintiff's complaint are not within the jurisdiction of this court under the Tucker Act, 28 U.S.C. § 1491. The court agrees with the defendant.

Count I of the complaint alleges that the defendant had a " 'special relationship' or special circumstances existed between Plaintiff and Defendants [sic]," that the defendant had an obligation and a duty to the plaintiff to protect her rights, and that defendant was her only recourse, since a Right to Sue form from the EEOC was the only way for plaintiff to go into federal court. The plaintiff further alleges that the defendant breached its duty and was negligent, by not treating the plaintiff's amended charges in a correct manner, by denying plaintiff benefits that she was entitled to, by discriminating against the plaintiff, and by not allowing the plaintiff to participate in services that were provided to others. Plaintiff alleges that she had a cause of action against Peoples Gas, but lost that right, and any subsequent remedies because of the negligent actions of the defen-

dant. Moreover, in Count III [13] of the complaint, the plaintiff claims that the defendant breached a duty to accommodate the plaintiff pursuant to the ADA. The plaintiff claims that the defendant had an obligation and a duty to accommodate the plaintiff and that the defendant's failure to include the ADA claim in plaintiff's Washington records and refusal "to file ... under the ADA after the mistake was make [sic] known to the Defendants, ... [thereby denying] the Plaintiff accommodation that was the Plaintiff's rights and the rights that the Plaintiff was entitled to."

As indicated above, this court's jurisdictional statute, the Tucker Act, explicitly states, "(a)(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States ... not sounding in tort." 28 U.S.C. § 1491 (1994); *see also Brown v. United States*, 105 F.3d 621, 623 (Fed.Cir. 1997), *reh'g denied*, April 17, 1997; *Shearin v. United States*, 992 F.2d 1195, 1197 (Fed. Cir.1993). In reviewing the jurisdiction of this court, the United States Court of Appeals for the Federal Circuit has stated the following:

It is well settled that the United States Court of Federal Claims lacks-and its predecessor the United States Claims Court lacked-jurisdiction to entertain tort claims. The Tucker Act expressly provides that the 'United States Court of Federal Claims shall have jurisdiction ... in cases not sounding in tort.' 28 U.S.C. § 1491(a)(1)(1988)(emphasis added), *as amended by* Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506; *see Aetna Casualty and Surety Co. v. United States*, 655 F.2d 1047, 1059, 228 Ct.Cl. 146 (1981).

*Shearin v. United States*, 992 F.2d at 1197.

██ Jurisdiction to hear tort claims is exclusively granted to the United States District Courts under the Federal Tort Claims Act. 28 U.S.C. 1346(b)(1994); [14] *see also*

---

13. Count II, in which plaintiff alleges violations of her civil rights, is discussed below.

14. 28 U.S.C. § 1346(b) provides as follows:

(b) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the

*Wood v. United States*, 961 F.2d 195, 197 (Fed.Cir.1992); *Martinez v. United States*, 26 Cl.Ct. 1471, 1476 (1992), *aff'd*, 11 F.3d 1069 (Fed.Cir.1993). Plaintiff's claims for monetary damages, which arise out of alleged negligent and wrongful conduct of the defendant in the course of discharging official duties, are claims clearly sounding in tort. *See Smithson v. United States*, 847 F.2d 791, 794 (Fed.Cir.1988), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989); *Berdick v. United States*, 222 Ct.Cl. 94, 99, 612 F.2d 533, 536 (1979); *Curry v. United States*, 221 Ct.Cl. 741, 746, 609 F.2d 980, 982–83 (1979); *Blazavich v. United States*, 29 Fed. Cl. 371, 374 (1993). Therefore, this court has no jurisdiction over allegations by plaintiff which may be characterized as based upon torts, including plaintiff's claims of negligence and breach of duty. Defendant's motion to dismiss for lack of subject matter jurisdiction should be granted with regard to plaintiff's allegations that the government acted negligently and/or breached a duty to plaintiff.

■ The plaintiff also argues that the defendant "took" the plaintiff's "right to sue" her employer in federal court. Plaintiff argues that the actions of the EEOC and the DOJ were fraudulent. Plaintiff's "answer" to the defendant's motion to dismiss "insists that the circumstances dealing with this Complaint has frudulent [sic] action by the Defendants...." Furthermore, plaintiff's "answer" alleges that "[t]he Defendants gave the Plaintiff a fraudulent contract, the right to [sue] letter was a fraud." The court notes that these claims also are based upon allegations of misconduct by government officials. In *Earnest v. United States*, this court dismissed claims against the government based upon allegations of misconduct by government officials, which a plaintiff alleged resulted in a taking. The court stated:

> Moreover, if, as plaintiff argues, the [government agency] ... acted improperly,

then no taking can have occurred, for takings result only from authorized acts of government officials. *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802–03 (Fed. Cir.1993); *Florida Rock Indus. v. United States*, 791 F.2d 893, 898–99 (Fed.Cir. 1986), *cert. denied*, 479 U.S. 1053, 107 S.Ct. 926, 93 L.Ed.2d 978 (1987). Claims based on unauthorized acts (wrongdoing) by government officials sound in tort. *Smithson v. United States*, 847 F.2d 791, 794 (Fed. Cir.1988), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989).

*Earnest v. United States*, 33 Fed. Cl. 341, 344 (1995). Therefore, this court has no jurisdiction over plaintiff's allegations that the government "took" her right to sue or acted fraudulently. Because these claims also sound in tort, any such claims must be dismissed.

Count II of the plaintiff's complaint alleges that the actions of the defendant have violated her civil rights, and that she was discriminated against due to her medical condition and because she filed complaints alleging misconduct. She also claims that she was not provided due process in violation of the Fifth and Fourteenth Amendments to the United States Constitution because, according to the plaintiff, she was not provided the same opportunity as other applicants to file an ADA claim and to appear in the United States district court.

■ It is well settled that this court does not have jurisdiction over civil rights claims brought under Title VII of the Civil Rights Act of 1964 or 42 U.S.C. § 1983. *See e.g. Clark v. United States*, 212 Ct.Cl. 590, 553 F.2d 104, *cert. denied*, 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 101, *reh'g denied*, 434 U.S. 943, 98 S.Ct. 440, 54 L.Ed.2d 305 (1977); *Blassingame v. United States*, 33 Fed. Cl. 504, 505, *aff'd*, 73 F.3d 379 (Fed.Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1885, 135 L.Ed.2d 179 (1996); *Bunch v. United*

---

Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting

within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b) (1994).

*States,* 33 Fed. Cl. 337, 341 (1995), *aff'd,* 78 F.3d 605 (Fed.Cir.1996); *Lee v. United States,* 33 Fed. Cl. 374, 378–79 (1995); *Sanders v. United States,* 32 Fed. Cl. 573, 575 (1995). Section 2000e–5(f)(3) contains the enforcement provisions of Title VII, and states the following:

> (3) Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter.

42 U.S.C. § 2000e–5(f)(3); *see* 28 U.S.C. § 1343(a)(4). Therefore, with respect to the plaintiff's claim based upon alleged civil rights violations, the court finds that the jurisdiction has not been granted to the United States Court of Federal Claims, to hear actions based on civil rights violations. Therefore, defendant's motion to dismiss such claims brought by the plaintiff must be granted.

 The state courts and United States district courts, not the United States Court of Federal Claims, also have exclusive jurisdiction to entertain claims under the Americans with Disabilities Act (ADA). *See Krouse v. American Sterilizer Co.,* 872 F.Supp. 203, 205 (W.D.Pa.1994). The ADA adopts the "powers, remedies, and procedures" set forth in Title VII. 42 U.S.C. § 12117(a); *see Martini v. A. Finkl & Sons Co.,* No. 96C0756, 1996 WL 667816, at *5 (N.D.Ill. Nov.15, 1996); *Jones v. Illinois Cent. R.R.,* 859 F.Supp. 1144, 1145 (N.D.Ill. 1994). The Americans with Disabilities Act, as enacted at 42 U.S.C. § 12117(a), states:

> The powers, remedies, and procedures set forth in sections 2000e–4, 2000e–5, 2000e–6, 2000e–8, and 2000e–9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated

under section 12116 of this title, concerning employment.

42 U.S.C.A. § 12117(a) (West 1995). The enforcement provisions of Title VII are made applicable to the ADA, including the provision which determines the forum in which an aggrieved party can seek judicial relief. As stated in *Krouse v. American Sterilizer Co.,* 872 F.Supp. 203 (W.D.Pa.1994), "[t]his provision [42 U.S.C. § 2000e–5(f)(3) ] is made applicable to ADA actions by 42 U.S.C. § 12117(a)." *Id.* at 205 n. 1. Therefore, just as this court found above that it lacks jurisdiction over claims under Title VII, the proper forum in which a party aggrieved under the ADA can seek judicial relief is not the United States Court of Federal Claims under 42 U.S.C. § 2000e–5(f)(3). Furthermore, the plaintiff has not shown any money-mandating provisions upon which to base her ADA claim. *See Sanders v. United States,* 34 Fed. Cl. 75, 80 (1995) (holding that the court lacked jurisdiction over the plaintiff's civil rights claim due to plaintiff's failure to provide a money-mandating statute), *aff'd,* 104 F.3d 376 (Fed.Cir.1996). Therefore, with respect to the plaintiff's claim based upon alleged violations of the ADA, the court finds that the defendant's motion to dismiss should be granted.

 The plaintiff also mistakenly attempts to rely on the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution as a basis for jurisdiction in this court. A Fifth or Fourteenth Amendment due process violation, however, does not create an independent cause of action for money damages.[15] The United States Court of Appeals for the Federal Circuit has stated: "Although the Fifth Amendment's due process clause provides that no person shall be deprived of property without due process of law, no language in the clause itself requires the payment of money damages for its violation." *Murray v. United States,* 817 F.2d 1580, 1583 (Fed.Cir.1987) (citing *Inupiat Community of the Arctic Slope v. United*

---

**15.** This court notes that although a Fifth Amendment due process violation does not create a cause of action for money damages, this court does have jurisdiction under the Takings Clause of the Fifth Amendment which states, "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. Plaintiff in this case, however, has not presented a cognizable takings claim requiring just compensation under the Fifth Amendment of the United States Constitution.

*States,* 230 Ct.Cl. 647, 662, 680 F.2d 122, 132, *cert. denied,* 459 U.S. 969, 103 S.Ct. 299, 74 L.Ed.2d 281 (1982)); *see also Earnest v. United States,* 33 Fed. Cl. at 344. Therefore, the due process allegations raised in the plaintiff's complaint also do not present causes of action cognizable in this court, and should be dismissed.

■ Plaintiff further argues that the "right to sue" letters created contracts or implied contracts with the plaintiff.[16] The jurisdiction of the United States Court of Federal Claims, with respect to contracts, extends only to express or implied-in-fact contracts; it does not include claims based upon contracts implied-in-law. *Hercules Inc. v. United States,* — U.S. ——, ——, 116 S.Ct. 981, 985, 134 L.Ed.2d 47 (1996)(citing *Sutton v. United States,* 256 U.S. 575, 581, 41 S.Ct. 563, 565, 65 L.Ed. 1099 (1921); *Merritt v. United States,* 267 U.S. 338, 341, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925); *United States v. Minnesota Mut. Inv. Co.,* 271 U.S. 212, 217, 46 S.Ct. 501, 503, 70 L.Ed. 911 (1926); *United States v. Mitchell,* 463 U.S. at 218, 103 S.Ct. at 2968); *Hatzlachh Supply Co. v. U.S.,* 444 U.S. 460, 465 n. 5, 100 S.Ct. 647, 650 n. 5, 62 L.Ed.2d 614 (1980) (citing *Alabama v. United States,* 282 U.S. 502, 507, 51 S.Ct. 225, 226–27, 75 L.Ed. 492 (1931); *Goodyear Tire & Rubber Co. v. United States,* 276 U.S. 287, 292–93, 48 S.Ct. 306, 307, 72 L.Ed. 575 (1928); *United States v. Minnesota Mutual Investment Co.,* 271 U.S. 212, 217, 46 S.Ct. 501, 503, 70 L.Ed. 911 (1926); *Hill v. United States,* 149 U.S. 593, 598, 13 S.Ct. 1011, 1013, 37 L.Ed. 862 (1893)). In *Hercules Inc. v. United States,* the United States Supreme Court elaborated on the distinction between an "implied in law" contract and an "implied in fact" contract:

> The distinction between 'implied in fact' and 'implied in law,' and the consequent limitation, is well established in our cases. An agreement implied in fact is 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the sur-

rounding circumstances, their tacit understanding.' *Baltimore & Ohio R. Co. v. United States,* 261 U.S. 592, 597, 43 S.Ct. 425, 426–427, 67 L.Ed. 816 (1923). *See also Russell v. United States,* 182 U.S. 516, 530, 21 S.Ct. 899, 904, 45 L.Ed. 1210 (1901) ('[T]o give the Court of Claims jurisdiction the demand sued on must be founded on a convention between the parties—"a coming together of minds"'). By contrast, an agreement implied in law is a 'fiction of law' where 'a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress.' *Baltimore & Ohio R. Co., supra,* at 597, 43 S.Ct., at 426.

*Hercules Inc. v. United States,* — U.S. at ——, 116 S.Ct. at 985.

■ A well-pleaded allegation in the complaint of an underlying express, or implied-in-fact, contract "is sufficient to overcome challenges to jurisdiction" in the United States Court of Federal Claims, *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1325 (Fed.Cir.1997) (citing *Spruill v. Merit Sys. Protection Bd.,* 978 F.2d 679, 686 (Fed. Cir.1992); *Gould,* 67 F.3d at 929; *Do–Well Mach. Shop, Inc. v. United States,* 870 F.2d 637, 639–40 (Fed.Cir.1989)). To establish a claim upon which relief can be granted, a plaintiff must allege the elements necessary to establish the existence of an express contract or an implied-in-fact contract. *Trauma Serv. Group v. United States,* 104 F.3d at 1325–27 (upholding dismissal for failure to state a claim upon which relief could be granted, pursuant to RCFC 12(b)(4), rather than lack of subject-matter jurisdiction, pursuant to RCFC 12(b)(1), when a plaintiff's allegations are based upon claims of an express or implied-in-fact contract, but fail sufficiently to set forth the factual elements necessary to support either type of contract); *cf. Girling Health Sys., Inc. v. United States,* 949 F.2d 1145, 1146–47 (Fed.Cir. 1991), *cert. denied,* 503 U.S. 940, 112 S.Ct. 1483, 117 L.Ed.2d 626 (1992) (dismissing the case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the plaintiff

---

16. The defendant properly notes that the plaintiff's contractual allegations were not a separate count of her complaint or referenced in her complaint. These allegations were urged by plaintiff in subsequent filings in the above-captioned case. Due to the plaintiff's *pro se* status, however, the court, nonetheless, addresses the plaintiff's contractual allegations.

had failed to establish the elements of a contract).

In *Allen v. United States,* 100 F.3d 133 (Fed.Cir.1996), the United States Court of Appeals for the Federal Circuit elaborated on the distinction between a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(4), and a motion to dismiss for lack of subject-matter jurisdiction, pursuant to RCFC 12(b)(1), in complaints alleging breach of contract. The court wrote that when a plaintiff "non-frivolously alleged a contract with the Government, ... there was no absence of subject matter jurisdiction" in the United States Court of Federal Claims due to its jurisdiction over contract claims. *Id.* at 135 (citing *Spruill v. Merit Sys. Protection Board,* 978 F.2d 679, 687–88 (Fed.Cir.1992)).

In addition the Court of Appeals wrote:

> To the extent a successful claim against the government requires compliance with all statutory elements of the claim, failure of proof of an element of the cause of action means the petitioner is not entitled to the relief he seeks. To conclude in such a case that the petitioner loses because the forum is 'without jurisdiction' is to obscure the nature of the defect. It would be more accurate to conclude that the petitioner has failed to prove the necessary elements of a cause for which relief could be granted.

*Spruill v. Merit Sys. Protection Board,* 978 F.2d at 687. Otherwise stated, plaintiff's "failure to prove an element of his [a plaintiff's] cause of action simply means he [the plaintiff] failed to state a claim upon which relief can be granted." *Allen v. United States,* 100 F.3d at 135 (citing *Gould, Inc. v. United States,* 67 F.3d 925, 929–30 (Fed.Cir. 1995)).

▬ A valid express contract requires that the following criteria have been met: "a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract." *Total Medical Management, Inc. v. United States,* 104 F.3d 1314, 1319 (Fed.Cir.1997), *reh'g denied* and *in banc* suggestion declined (Mar 27, 1997) (citing *Thermalon Indus., Ltd. v.*

*United States,* 34 Fed. Cl. 411, 414 (1995) (citing *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990), *cert. denied,* 501 U.S. 1230, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991), and *Fincke v. United States,* 230 Ct.Cl. 233, 675 F.2d 289, 295 (1982))).

▬ An implied-in-fact contract can only exist in the absence of an express contract. *Algonac Mfg. Co. v. U.S.,* 192 Ct.Cl. 649, 428 F.2d 1241, 1255 (1970), *supplemented by Algonac Mfg. Co. v. U.S.,* 198 Ct.Cl. 258, 458 F.2d 1373 (1972). In order to establish jurisdiction based on an implied-in-fact contract, the plaintiff also must establish the elements of a contract, including offer, acceptance, consideration, mutuality of intent, and definiteness of terms. *Girling Health Systems Inc. v. United States,* 949 F.2d at 1146–47 (citing *Tree Farm Dev. Corp. v. United States,* 218 Ct.Cl. 308, 585 F.2d 493, 500 (1978); *Somali Dev. Bank v. United States,* 205 Ct.Cl. 741, 508 F.2d 817, 822 (1974)); *see also City of El Centro v. United States,* 922 F.2d at 820 (citing *Russell Corp. v. United States,* 210 Ct.Cl. 596, 537 F.2d 474, 482 (1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977); *Fincke v. United States,* 675 F.2d at 295); *Fincke v. United States,* 675 F.2d at 295 (citing *Baltimore and Ohio R.R. Co. v. United States,* 261 U.S. 592, 43 S.Ct. 425, 67 L.Ed. 816 (1923)); *Shearin v. United States,* 25 Cl.Ct. 294, 296 n. 5, *aff'd,* 983 F.2d 1085 (Fed.Cir.1992) (table decision). The plaintiff also must establish that the government official who allegedly formed the contract had actual authority to bind the government. *City of El Centro v. United States,* 922 F.2d at 820 (citing *Juda v. United States,* 6 Cl.Ct. 441, 452 (1984), *appeal dismissed sub nom. by People of Bikini v. United States,* 859 F.2d 1482 (Fed.Cir.1988) (citing *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947))); *Shearin v. United States,* 25 Cl.Ct. at 297 (citing *Radioptics, Inc. v. United States,* 223 Ct.Cl. 594, 621 F.2d 1113, 1123 (1980); *Housing Corp. of Am. v. United States,* 199 Ct.Cl. 705, 468 F.2d 922, 925 (1972)).

In the above-captioned case, the plaintiff has not alleged the elements necessary to

establish the existence of either an express contract or an implied-in-fact contract. The plaintiff's allegations of the existence of an express contract appear to rely on her allegations that the government had a duty to see that the papers filed with the EEOC were properly filled out, that the papers were properly coordinated throughout the relevant governmental agencies, and that the Notices of Right to Sue created contractual duties towards the plaintiff. The plaintiff's "surreply" states the following:

> The Defendant's [sic] gave the Plaintiff two right to sue letters which were contracts. Without the right to sue letters the Plaintiff had no rights to the Federal District Court. The right to sue letters were the means of going into Federal Court. With out [sic] the right to sue letters the Plaintiff would not have provision under the law, but with the right to sue, the Plaintiff had the ability to go into Court. The Plaintiff is not asking this Court to take any action against People [sic] Gas, Plaintiff's former employer but the Defendant's [sic] for not processing the documents that would have included the Plaintiff [sic] rights under the ADA.

Furthermore, the plaintiff's "answer" to the defendant's motion to dismiss states: "[t]he Defendants gave the Plaintiff a fraudulent contract, the right to [sue] letter was a fraud."

Plaintiff's allegations, that she was deprived of her rightful opportunity to pursue her ADA claims, are unfounded and not based on any contract created with the United States. The "Notice of Charge of Discrimination," which was sent to the plaintiff's employer, Peoples Gas, clearly indicates that the charges to be filed were initiated pursuant to the ADA and Title VII of the Civil Rights Act of 1964, and that the basis for the alleged discrimination was sex, disability, and retaliation. Furthermore, the February 27, 1996 transcript of a status conference held in the plaintiff's case before the United States District Court for the Northern District of Illinois, Eastern Division, indicates that the claims before that court included the ADA claim. On the record, at the February 27, 1996 status conference, the attorney for the employer, Peoples Gas, specifically acknowledged the existence of the ADA claim. The district court judge presiding over the case also stated, on the record, that the ADA claim was included in the plaintiff's claims before the court. In fact, the plaintiff, herself, acknowledges that the attorney for the defendant, Peoples Gas, had admitted in the Answer to the Plaintiff's Second Amended Complaint in the district court that an ADA claim existed.[17] Therefore, even if the plaintiff had sufficiently pleaded and supported her allegations of the existence of an express or implied-in-fact contract, there would not have been a breach of such contract since the ADA claim appears clearly to have been included in her action filed in the district court.

In sum, the court finds no language in either the May 14, 1993 or March 7, 1994 Notices of Right to Sue which would even colorably satisfy the elements necessary to establish an express or implied-in-fact contract of the type alleged by plaintiff in those documents. The letters simply inform the plaintiff that her right to sue her employer for alleged violations has been recognized. Although plaintiff claims that the Right to Sue letters created a contract with the government and that her rights to pursue an ADA claim have been violated, these claims appear to be frivolous. The court finds that the plaintiff has not sufficiently pleaded the existence of the elements required to establish the existence of an express contract or an implied-in-fact contract. Therefore, with regard to the plaintiff's claim based upon an alleged breach of contract by the government, the court finds that any such claims must be dismissed.

Finally, plaintiff's "answer," responding to the defendant's motion to dismiss, revived an earlier request for assignment of an attorney. Plaintiff's "answer" states "[t]he Plaintiff

---

17. The plaintiff's confusion with regard to the existence of her ADA claim appears to be based upon her own investigation efforts of the claim in Washington, D.C. She alleges that the Justice Department, the EEOC, and "People with Handicap Disabilities" in Washington, D.C., all indicated that they did not have "any charge in Washington saying that I have ever filed an Americans with Disabilities Act claim."

made a motion on November 19, 1996 seeking for the court to appoint counsel, because the Plaintiff does not want to act Pro Se." Plaintiff also states "the circumstances dealing with this complaint has frudulent [sic] action by the Defendants, and the issues are complex and there are exceptional circumstances which warrant counsel." The plaintiff's answer and an earlier motion state that such an appointment of counsel also is necessary due to the plaintiff's lack of a legal education, the countless resources of the defendant, and the plaintiff's family and financial circumstances. Plaintiff specifically cites to 28 U.S.C.A. § 1915(d).

Prior to a recent 1996 amendment, 28 U.S.C. § 1915(d) (1994) dealt with the appointment of counsel in proceedings *in forma pauperis,* and read as follows:

§ 1915. **Proceedings in forma pauperis**

\* \* \* \* \* \*

(d) The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

28 U.S.C. § 1915(d) (1994). On April 26, 1996, 28 U.S.C. § 1915 was amended by Public Law No. 104–134, Title VIII, sections 804(a),(c), and (e), 110 Stat. 1321–73, 1321–74, renumbered Title I, on May 2, 1996, by Public Law No. 104–140, § 1(a), 110 Stat. 1327. The amended § 1915 contains a subsection which reflects language similar to that cited to by the plaintiff, and reads as follows:

§ 1915. **Proceedings in forma pauperis**

\* \* \* \* \* \*

(e)(1) The court may request an attorney to represent any person unable to afford counsel.

28 U.S.C.A. § 1915(e)(1) (as enacted April 26, 1996). Furthermore, 28 U.S.C. § 2503(d) states the following:

§ 2503. **Proceedings generally**

\* \* \* \* \* \*

(d) For the purpose of construing sections 1821, 1915, 1920, and 1927 of this title, the United States Court of Federal Claims shall be deemed a court of the United States.

28 U.S.C. § 2503(d) (1994).

■ In the above-captioned case, although there may exist an issue of whether plaintiff can afford counsel, the plaintiff did not file the above-captioned law suit *in forma pauperis.* She paid the full court filing fee. Even if the plaintiff argued that 28 U.S.C. § 1915(e)(1) applied to all persons unable to afford counsel, and not solely to those filing *in forma pauperis,* the plaintiff has not provided sufficient proof of her inability to afford counsel. In fact, in her filings, plaintiff's request for the appointment of counsel is based primarily upon the complexity of the issues, her lack of a legal education, the inequity of the resources to the parties, and the plaintiff's family situation. Moreover, the plaintiff has previously retained numerous counsel while pursuing her action in the United States district court, and stated in her motion for appointment of counsel before this court that: "[t]he Plaintiff would like this case to move forward and has been looking for counsel on her own, and needs more time. The American Civil Liberties Union and the AACP [sic] are looking over the documents that I filed as the Complaint but needs more time for the answer from the ACLU and the NAACP.... Judge, I am asking to *Extend Time* or to *Appoint Counsel.*"

■ The authority to appoint counsel is discretionary and should be exercised according to case law when the court considers it "worthwhile" to do so. *Lane v. United States,* 208 Ct.Cl. 955, 956, 1975 WL 7116 (1975). Furthermore, the court "must be persuaded that plaintiff has a 'compelling and meritorious' basis for recovery." *Lane v. United States,* 208 Ct.Cl. at 956; *Martin v. United States,* 31 Fed. Cl. 756, 757 (1994). "The appointment of counsel in a civil case is not a right, but a privilege justified only by exceptional circumstances." *Martin v. United States,* 31 Fed. Cl. at 757 (citing *Lavado v. Keohane,* 992 F.2d 601, 605–06 (6th Cir.1993) (citing *Mekdeci v. Merrell Nat'l Labs.,* 711 F.2d 1510, 1522 n. 19 (11th Cir.1983), and *Lopez v. Reyes,* 692 F.2d 15, 17 (5th Cir. 1982))). The court must examine " 'the com-

plexity of a case and the ability of the applicant to prepare and present the case,'" in its determination of whether exceptional circumstances exist. *Martin v. United States,* 31 Fed. Cl. at 757 (citing Kevin W. Brown, Annotation, *Appointment of Counsel, In Civil Rights Action, Under Forma Pauperis Provisions (28 U.S.C.S. § 1915(d)),* 69 A.L.R. Fed. 666, 670 (1984)).[18]

 Although plaintiff's pleadings are not artful in the legal sense, in her complaint and additional pleadings, she has sufficiently raised the issues which she believes exist for the court's consideration. In the instant case, the court is not persuaded that plaintiff has a compelling and meritorious basis for recovery, or that jurisdiction is properly lodged in this court. Consequently, the court does not find that exceptional circumstances have been demonstrated in the above-captioned case which would merit the appointment of counsel, especially since the absence of any jurisdictional basis or a claim upon which relief can be granted disposes of the entire case. Therefore, the court denies the plaintiff's motion for appointment of counsel.

### CONCLUSION

After reviewing the complete record before the court, providing plaintiff every benefit of the doubt and full consideration due to plaintiff's *pro se* status, the court finds that there is no basis for jurisdiction in the United States Court of Federal Claims to review the claims raised by plaintiff; and finds that the plaintiff has failed to state any claims upon which relief can be granted. Therefore, the court, hereby, **GRANTS** the defendant's motion to dismiss. The Clerk's Office is directed to **DISMISS** the above-captioned case, with prejudice.

**IT IS SO ORDERED.**

---

18. The court in *Martin v. United States,* 31 Fed. Cl. at 757, n. 2, noted the following:
 While 69 A.L.R.Fed. 666 refers to civil rights actions, there is no reason to differentiate between appointment of counsel under 28 U.S.C. § 1915(d) to pursue a civil rights claim, and appointment of counsel under 28 U.S.C. § 1915(d) to pursue any other civil law claim. *Id.*