K. Kay SHEARIN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 91–1199C.

United States Claims Court.

Feb. 14, 1992.

K. Kay Shearin, pro se.

Scott E. Ray, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, and James M. Kinsella, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This case comes before the court on defendant's motion to dismiss for lack of jurisdiction or alternatively, for failure to state a claim upon which relief can be granted. In response to defendant's motion, plaintiff has filed a cross-motion for summary judgment. For the reasons set forth below, the court finds that it has jurisdiction, but that the action must be dismissed for failure to state a claim upon which relief can be granted.

## FACTS [1]

By order of June 26, 1987, the United States District Court for the District of Delaware instructed the Clerk of the court to appoint counsel to represent Cecil Hall in his 42 U.S.C. § 1983 (1988) claim.[2] Plaintiff, a Delaware attorney, was notified by the Clerk that she had been appointed as counsel to Mr. Hall pursuant to 28 U.S.C. § 1915(d) (1988).[3] The Clerk then apparently selected plaintiff from the court's qualified attorneys list.

The Clerk sent plaintiff a copy of the June 26 order along with a standardized form entitled "Appointment of and Authority to Pay Court Appointed Counsel" ("Voucher"). This voucher is intended for use by court-appointed attorneys for indigent criminal defendants to collect their fees for services and expenses pursuant to 18 U.S.C. § 3006A (1988). The voucher contains a checklist which permits identification of the type of criminal defendant being represented. The Clerk checked the box labeled "Other" and wrote "1983" beside it, apparently believing the fee schedules and conditions for reimbursement under § 3006A applied to cases brought pursuant to § 1983.

Upon receiving these documents, plaintiff undertook the task of developing her client's case. From July 6, 1987 to September 7, 1988, she spent 25.3 hours and incurred other incidental expenses on Mr. Hall's behalf. The record does not directly reflect the outcome of Mr. Hall's case. The fact that plaintiff was not paid fees through 42 U.S.C. § 1988 (allowing attorney's fees for successful section 1983 claims), and that plaintiff's brief contains the statement, "Hall's claim was weaker than appeared," suggests it ended without success. In any event, plaintiff expended no further efforts after September 7, 1988. On September 22, 1990, she submitted a completed voucher for payment. The total sought was $1,065.46, reflecting the hours worked at $40 per hour plus itemized incidental expenses. The district court refused to authorize payment. Plaintiff subsequently filed an action for breach of contract in this court.

## DISCUSSION

Plaintiff's claim essentially is that by requesting her to take Mr. Hall's case, the

---

1. The facts are drawn from the complaint and materials attached to it.

2. Mr. Hall had been granted permission to proceed *in forma pauperis* under 28 U.S.C. § 1915(a) (1988).

3. The order described the necessity for the appointment of counsel and also cited two cases as authority for its appointment. *Hodge v. Police Officers,* 802 F.2d 58 (2d Cir.1986) and *Maclin v. Freake,* 650 F.2d 885 (7th Cir.1981).

court, acting through its Clerk, expressly contracted with her to perform legal services for a fee. The Government asserts that neither the district court nor the Clerk could obligate the Government to pay legal fees for *pro bono* service because there exists no statutory basis for payment of such fees under the circumstances of this case. In the absence of such authority, neither the court nor the Clerk could obligate the expenditure of appropriated funds.

Insofar as is relevant here, under the Tucker Act, the Government may be sued in the Claims Court in an action founded upon "... any Act of Congress ... or upon any express or implied contract with the United States...." 28 U.S.C. § 1491(a)(1) (1982).[4] As discussed below, there is no statute which directs the payment of money to plaintiff under the circumstances alleged. Apparently in tacit admission of that shortcoming, plaintiff has taken the only other relevant alternative to relief, contract. Even though relying on a contract theory, however, the requirement of a statutory underpinning for the suit is not entirely eliminated. Assuming for argument's sake that the circumstances would sustain the more traditional elements of an implied or express contract,[5]

the plaintiff cannot overcome the requirement, unique to contracting with the federal government, that neither the court nor the Clerk had statutory authority to obligate appropriated funds to pay her.

The long-standing rule is "that a court may not authorize the commitment of federal funds to underwrite the necessary expenditures of an indigent civil litigant's action" absent some statutory provision. *See Moss v. ITT Continental Baking Co.,* 83 F.R.D. 624, 625 (E.D.Va.1979); *Haymes v. Smith,* 73 F.R.D. 572, 574 (W.D.N.Y.1976). In this case, an examination of the potential statutory bases for payment of attorney fees demonstrates either that the court and Clerk had no intent to commit to payment of funds (which is most probable), or if they did, they acted without authority.

Mr. Hall was permitted to proceed *in forma pauperis* pursuant to § 1915 in order to pursue a civil rights claim under § 1983. The only fee-related language in § 1915 is found at subsection (d), which provides: "The court may request an attorney to represent any [ ... ] person [proceeding *in forma pauperis*] unable to employ counsel...." Nothing in this language, or the balance of § 1915, authorizes payment of counsel fees.[6] *See Nelson v. Redfield*

---

**4.** The Government's motion to dismiss also asserts lack of jurisdiction (RUSCC 12(b)(1)). To assume jurisdiction over a claim against the United States, it must be apparent to the court that there exists some colorable basis for jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1988). *See Metzger, Shadyac & Schwartz v. United States,* 10 Cl.Ct. 107, 109–10 (1986). In this case, plaintiff alleges the formation of a contract. The fact that no legally binding contract existed, however, "does not alter the fact that plaintiff currently assert[s] a 'claim against the United States founded ... upon [an] express or implied contract with the United States,' within the meaning of § 1491." *Id.* at 109 (citing *Claxton v. Small Business Admin.,* 525 F.Supp. 777, 781 (S.D.Ga.1981)).

**5.** Even an implied in fact contract requires the same elements of consideration, mutuality of intent, and definiteness of terms. *Girling Health Systems, Inc. v. United States,* 949 F.2d 1145, 1147 (Fed.Cir.1991). The elements of a contract are clearly not present with respect to the district court itself. There is no evidence of mutuality of intent to contract. The most natu-

ral reading of the order of June 26 is that the court was making a routine assignment under § 1915(d), and that it did not purport to alter the body of law that has built up construing that provision. Nor is there any basis for finding that the court endorsed the Clerk's modification of the voucher. As to the Clerk, the facts recited in the complaint do not suggest any negotiation or "meeting of the minds" with respect to an agreement. The very existence of a statutory framework for appointment of counsel, and, under some circumstances, payment of fees, militate strongly against characterizing these events as contractual in nature. It is unnecessary to dismiss on this basis, however, in view of the deficiency discussed in the text.

**6.** The decision of the Supreme Court in *Mallard v. United States Dist. Court,* 490 U.S. 296, 310, 109 S.Ct. 1814, 1822–23, 104 L.Ed.2d 318 (1989), emphasizes that a district court may only *request* an attorney to take a § 1983 case. It is plain from the Court's reasoning that what was at stake was the ability *vel non* of the district court to coerce representation without compensation. *See id.* at 303–04, 109 S.Ct. at 1819.

*Lithograph Printing,* 728 F.2d 1003, 1005 (8th Cir.1984).

■ Nor is § 1983 an independent basis for recovery of legal fees. Instead, the statutory provision for payment of fees in connection with § 1983 actions is found in 42 U.S.C. § 1988. That section only permits the recovery of fees if the client "prevails." Mr. Hall did not prevail at the district court.

■ The voucher was furnished to plaintiff pursuant to 18 U.S.C. § 3006A. That section only applies to cases involving indigent *criminal* defendants, however, and the Clerk apparently erroneously assumed otherwise. Mr. Hall was a civil litigant, and neither he nor his attorney can claim fees under § 3006A. In short, even assuming that the Clerk intended to obligate the United States to pay plaintiff's fees regardless of the outcome of Mr. Hall's § 1983 action, there was no statutory basis for making such a promise.

■ A person who alleges that the United States is a party to a contract must establish that the agent had actual authority to make the contract. *See Radioptics, Inc. v. United States,* 621 F.2d 1113, 1123, 223 Ct.Cl. 594, 612 (1980); *Housing Corp. of Am. v. United States,* 468 F.2d 922, 925, 199 Ct.Cl. 705, 711 (1972). As the Supreme Court taught long ago:

> Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority.... And this is so even though ... the agent himself may have been unaware of the limitations upon his authority.

*Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947).

■ The crop insurance committee in *Merrill* purported to assure Merrill that a crop would be covered when in fact applicable regulations did not provide such coverage. *Merrill,* 332 U.S. at 382, 68 S.Ct. at 2. The disability of the committee to act went not to its general power to commit to provision of insurance, but to the nature of the attempted contract. Congress had not authorized insurance to be issued for the crop that Merrill planted. *See id.* at 386, 68 S.Ct. at 4. The plain lesson from this decision is that the Government cannot be estopped to disavow the illegal acts or representations of its agents, even if they have general contracting authority. *See id.* at 385, 68 S.Ct. at 3.

This principle was recently reaffirmed in *OPM v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). In that case, a personnel officer had incorrectly advised the plaintiff that he would be entitled to certain benefits if he retired. *Richmond,* 110 S.Ct. at 2467. In fact, under the applicable law, he was not eligible. *Id.* The Court held that the incorrect counsel of Government employees does not provide an independent basis for appropriating federal funds. *Id.* at 2475–76. That function, or the delegation of the execution of that function to others by statute, is reserved to the Congress. U.S. Const. art. I, § 9; *see Richmond,* 110 S.Ct. at 2474–75.

■ Plaintiff's asserted reliance on any arrangement with the court or the Clerk to pay her fees was thus undertaken at her own peril. There was no express statutory basis for payment of fees, and the Government is not estopped to challenge the lack of authority to agree to pay plaintiff for legal services in an unsuccessful § 1983 action.

■ Although not cited by plaintiff, the court notes that two lines of authority have developed in the Court of Claims and in the Federal Circuit in which payment can be made despite the underlying illegality of the bargain struck between the parties. These exceptions are discussed in detail in *United States v. Amdahl Corp.,* 786 F.2d 387, 393–94 (Fed.Cir.1986). The first exception emerges from the acceptance by the Government (presumably through someone authorized to bind it) of goods and services. The contract is thus enforceable to the limited extent that the Government must pay for the worth of that which it has

received without complaint. *Id.* at 393 (citing *Prestex, Inc. v. United States*, 320 F.2d 367, 373, 162 Ct.Cl. 620, 628 (1963)). The second exception is somewhat more conceptually difficult. It concerns the payment for expenses incurred by a contractor which did not result in a benefit to the Government—start-up costs, for example. Courts have allowed recovery of such expenses, but only as a matter of equity, if the error was not plain and if the contractor innocently assumed it could provide the services. *Id.* at 393–94 (citing *John Reiner & Co. v. United States*, 325 F.2d 438, 440, 163 Ct.Cl. 381, 386–87 (1963), *cert. denied*, 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964)).

Even assuming that both these potential exceptions survive the Supreme Court's decision in *Richmond,* neither is applicable here. In the case of the first exception, the benefit must be accepted by the Government. *Amdahl,* 786 F.2d at 393; *Prestex, Inc.,* 320 F.2d at 373, 162 Ct.Cl. at 628. Whatever benefit there was here went to Mr. Hall. No one with authority "accepted" services on behalf of the Government. As to the second exception, it too is inapplicable. Plaintiff is an attorney, and should be presumed to be familiar with the law. It should have been apparent that the modification to the voucher was ill-conceived.

## CONCLUSION

Because there is no applicable statutory basis for asserting that she is entitled to relief, as a matter of law, plaintiff's claim must be dismissed. The Clerk is directed to enter judgment dismissing the complaint. No costs.